## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| PATRICIA JENKINS, | ) | |
| | ) | Case No. 04 B 20572 |
| Debtors. | ) | |
| | ) | |
| RONALD R. PETERSON,<br>NOT INDIVIDUALLY, BUT IN HIS<br>CAPACITY AS CHAPTER 7 TRUSTEE, | ) | Hon. Susan Pierson Sonderby |
| Plaintiff, | ) | Adv. No. 04 A 03998 |
| v. | ) | |
| PERCY LEWIS, IN HIS CAPACITY AS<br>TRUSTEE OF 11352 S. LAFLIN ST.,<br>CHICAGO, IL, PATRICIA JENKINS,<br>AND OTHER UNKNOWN PERSONS<br>WHO CLAIM A BENEFICIAL<br>INTEREST UNDER THE DEED IN<br>TRUST NAMING PERCY LEWIS AS<br>TRUSTEE OF 11352 S. LAFLIN ST.,<br>CHICAGO, IL, | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court after trial on the adversary complaint filed by Ronald R.

Peterson, as trustee of the estate of Patricia Jenkins (the "Chapter 7 Trustee"), seeking, *inter alia*,

to sell both the estate's interest and the interests of her co-owner siblings in certain real property in

Chicago, Illinois. It is Debtor's position, as well as that of her brother, Defendant Percy Lewis, Jr.,

that Debtor has no interest in the property.

Patricia Jenkins filed her Chapter 7 petition on May 27, 2004. At that time (and for many

years prior thereto), she resided at 11352 South Laflin Street, in Chicago, Illinois (the "Property").

Prior to June 6, 1974, the Property was owned by Debtor's parents, Percy Lewis, Sr. and Gertrude

Lewis, as joint tenants. Debtor's father died on May 17, 1974. Shortly thereafter, on June 6, 1974,

Debtor's mother executed a deed in trust (the "Trust Deed"), transferring the Property to her son,

Percy Lewis, Jr., as trustee. The Trust Deed provides, in part:

> THE GRANTOR GERTRUDE LEWIS, surviving joint tenant to Percy Lewis, as
> widow, ... for and in consideration of Ten and no/100ths Dollars, and other good
> and valuable considerations in hand paid, Conveys ... unto PERCY LEWIS, JR., of
> Chicago, Ill., as Trustee under the provisions of a trust agreement dated the 6th day of
> June, 1974, and known as Trust Number 60674, the following described real estate
> in the County of Cook and State of Illinois, to wit:
> [legal description of Property]
> TO HAVE AND TO HOLD the said premises with the appurtenances upon
> the trusts and for the uses and purposes herein and in said trust agreement set forth.

At the bottom of the Trust Deed, the following is typewritten: "This Deed prepared by: J.

STIRLING MORTIMER, MORTIMER & HOFFMAN, 11 South La Salle, Chicago, Ill., 60603."

Debtor's mother resided at the Property until her death on April 27, 1978. Debtor, who was

also living there, continued to reside at the Property after her mother's death.

Debtor prepared her bankruptcy petition and schedules with the assistance of legal counsel.

The Property is listed on Schedule A (entitled "Real Property"), with the phrase "owns with three

siblings." The current market value of Debtor's interest in the Property is listed as $70,000.

On July 14, 2004, or thereafter, Debtor attended a meeting of creditors pursuant to §341 of

the Bankruptcy Code. At that meeting, Debtor swore under oath that the schedules attached to her

-2-

bankruptcy petition were truthful, accurate, fair, and complete.

On or about October 29, 2004, the Chapter 7 Trustee filed the instant adversary complaint, alleging that the Property is held in trust, that Debtor holds a beneficial interest therein which constitutes property of the estate, and that he should be authorized to sell both the estate's interest in the Property and the interests of Debtor's siblings pursuant to §363(h) of the Bankruptcy Code.

On November 15, 2004, an answer was filed by Percy Lewis, as "Attorney for the Defendants," denying, *inter alia*, that Debtor holds any interest in the Property. An amended answer was filed on December 22, 2004, to the same effect.

At the trial on the Chapter 7 Trustee's complaint, Percy Lewis, Jr. stated that he was not representing the Debtor, but that he was representing himself. Both Debtor and Lewis were called as witnesses by the Chapter 7 Trustee. Debtor testified that she has resided at the Property for over thirty years. She has three siblings, and she lives at the Property with her sister, Pamela Webster. Debtor and her sister have paid the utilities, real estate taxes, and homeowner's insurance on the Property; they have never paid rent.

Debtor has two years of college education and has been employed for the last ten years with the Quarasan Group. She identified her signature on the bankruptcy petition and schedules and acknowledged that she was "pretty sure" that she had had an opportunity to ask questions if she was unsure of something counsel was asking about as the schedules were being prepared. (Transcript, at 13) Debtor nonetheless testified that she did not understand what she was signing at the time she executed her petition and schedules. She further claimed that she did not know that the Property was listed on her Schedule A and that she had never told her attorney that she had an interest in the Property. When asked by the court where the attorney got the information to put in the schedules,

Debtor replied, "Some I gave her, but some of it is incorrect." (Transcript, at 20)  When questioned

by counsel for the Chapter 7 Trustee, Debtor responded as follows:

> Q    And it is now your position that it is the attorney and nothing that you
>      said or that you said to her that was the basis for the Schedule A?  In
>      other words, your attorney made everything on Schedule A up?
>
> ...
> A    Well, no, not everything.
>
> ...
> Q    Where it says that you own the house at 352 [sic] South Laflin with
>      your three siblings, it's your position that your attorney made this up?
> A    I didn't tell her that.
> Q    She came up with it on her own?
> A    I didn't tell her.
> Q    Now, after the trustee filed his suit, ... did you speak with your brother
>      about these matters?
> A    Yes.
> Q    Did you talk with him about whether or not you owned the property or
>      whether he owned the property?
> A    Not about who owned the property, about why did I file.
> Q    Did he remind you when you spoke to him that he owned the property
>      and not you?
> A    He did remind me, but he didn't have to.  I knew that.

(Transcript, at 35-36).

Percy Lewis, Jr. testified that he currently lives in a suburb of Detroit, Michigan and that he

has not lived at the Property for any appreciable period of time since 1966 through 1968.  He

obtained a juris doctor degree from DePaul University in 1977 and is admitted to practice law in the

State of Michigan.  Lewis acknowledged that he holds the Property as trustee pursuant to the Trust

Deed but testified that he is the sole beneficiary of the trust.  He further testified in this regard as

follows, upon questioning by counsel for the Chapter 7 Trustee:

> Q    Sir, where is trust agreement 60674?
> A    I wasn't aware there was a trust agreement.  When I went to JP Sterling
>      Mortimer, which was my contract instructor, the only thing he gave me
>      was this deed in trust to be filed after my mother signed it.

-4-

...

Q    So it is your contention that no trust agreement was ever created?

A    That's - - yes. I never saw a trust agreement. I took whatever was given
to me and filed - -

Q    Sir, a simple yes or no answer is sufficient. Is it your contention that
there is no trust agreement?

A    To the best of my knowledge, yes.

Q    Thank you.
Now, this deed conveys the house to you as trustee?

A    Yes, it does.

Q    Who is the beneficiary of that trust?

A    I am.

Q    So you were both the trustee and beneficiary for - - you're the trustee
for yourself as beneficiary - -

A    Correct.

(Transcript, at 42-43). The court then inquired how Lewis knew that, and he responded, "Because

that's what my mother wanted and, you know, that's what was done." (Transcript, at 43). According

to Lewis, "the reason it was done is because [his] mother couldn't afford it." (Transcript, at 44). She

was an invalid at the time and gave it to Lewis because he "had the assets to afford the home."

(Transcript, at 45). Lewis testified that his mother "sat down and talked to [him] concerning the

properties, [and] said, 'I want to give you the property,' and, you know, 'hopefully you'll be able to

afford it.'" (Transcript, at 45-46). Lewis further testified that at the time of the conveyance, he only

gave his mother ten dollars, but he ultimately "paid off the mortgage and all of the bills that were due

at that particular time, over $10,000." (Transcript, at 44). He stated that his sister, Pamela Webster,

had been living at the Property rent-free for twenty years or more and that she and Debtor had paid

the utilities, taxes, and homeowner's insurance for the past 25 or 26 years. (Transcript, at 52-54).

Lewis responded as follows to questioning by counsel for the Chapter 7 Trustee:

Q    ... So it is your contention then that what your mom wanted was for you
to have this property and to be free to do whatever you wanted with it.
She didn't want to leave anything to your sisters?

A     No.
Q     Did your mom tell you that that's what she wanted to do?
A     She wanted me to have it free and clear, yes.
Q     Did she tell you she intended to leave nothing to your sisters?
A     I don't think we ever had a discussion about whether she intended to or
      not. She knew that I could afford it, and I was the only one that was able
      to afford it ... .

(Transcript, at 54).

Lewis was asked to explain why, if he was the sole beneficiary, the Property was conveyed

to him as trustee, and not simply in fee simple. He responded that he was "not sure exactly," but that

his "assumption" was that his aunt, who had come to live with the family after his father died,

"probably called [his] cousin," a federal magistrate judge, to discuss the matter and determined that

a trust deed would be appropriate. According to Lewis, his aunt said to him, "You need a deed in

trust." (Transcript, at 47-48). Lewis acknowledged that at his deposition he had stated that his law

professor, J. Stirling Mortimer, suggested the deed in trust. (Transcript, at 48-49). Lewis further

testified that the trust deed was used in order to avoid confusion as to who - - as between Percy

Lewis, Sr. and Percy Lewis, Jr. - - actually owned the Property. He stated:

> [T]hey wanted to do something that would denote that Percy Lewis, Jr., was the
> owner of the property. If my mother had conveyed it in fee simple to Percy
> Lewis, you know, it might have got confused. Even if she conveyed it to Percy
> Lewis, Jr., in fee simple, there might have been some confusion. And they didn't
> want that, so they did it in a deed in trust.
>     Had I known more about it at the time, I would have said, no, don't do this.
> You know, just put it to me in fee simple and we'll deal with the problems that
> arise as a result of this. ...
>     And, like I said, this was done 30 some years ago, and hindsight is a lot
> more - - no better than foresight. But, you know, I wish I could have changed that
> at the time. But the deed in trust was done, you know, for those reasons.

(Transcript, at 57-58).

In his closing argument, Lewis reiterated that the trust deed was used to avoid confusion and

-6-

stated that "it should have been fee simple." When asked by the court how use of a trust deed would

help distinguish between Percy Lewis, Sr. and Percy Lewis, Jr., he replied:

> A    Like I said, I am not sure why that was done. I know the reason it was done,
> but I'm not sure why it was done. I think they wanted something ... that
> when anyone came and looked at who owned the property, they would know
> right off it wasn't Percy Lewis, Sr., even though my father - -
>
> The Court:  Well, why wouldn't "Junior" on a warranty deed have the same effect?
>
> A    Like I said, it would. It would have had the same effect. But I'm not sure why
> they did it the way they did it. I only followed instructions. And when I went
> to JP Sterling Mortimer, ... you know, he followed basically what we thought.
> And I don't know why. I really don't.

(Transcript, at 66-67).


## DISCUSSION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. It is a core

proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (N), and (O). Venue is proper in this district

pursuant to 28 U.S.C. §1409(a).

The Chapter 7 Trustee contends that Trust No. 60674, referenced in the Trust Deed, was in

fact created and executed and that Lewis' failure to produce it warrants an inference that the evidence

would be unfavorable to him. Lewis, on the other hand, testified that "to the best of his knowledge"

there is no trust agreement. (Transcript, at 43). While Lewis' testimony during the trial was largely

lacking in credibility, there is nonetheless insufficient evidence in the record to establish that the trust

agreement exists (or ever existed). Accordingly, the inference desired by the Chapter 7 Trustee is

not warranted. His alternative contention, however, that Lewis holds the Property as trustee of a

resulting trust for the benefit of himself and his three siblings, has merit.

Under Illinois law, an instrument creating an express trust "must describe with certainty the

-7-

subject matter, the beneficiaries, the nature of the beneficiaries' interests, and the manner in which the trust is to be performed." *Teeple v. Hunziker*, 118 Ill.App.3d 492, 497 (1983) (citing *Jones v. McCollen*, 85 Ill.App.2d 375, 379, 227 N.E.2d 788 (1967). "Wherever an intention to create a trust can be fairly collected from the language of the instrument and the terms employed, such intention will be supported by the courts." *In re Estate of Zukerman*, 218 Ill.App.3d 325, 330 (1991).

Here, the intention to create a trust is clear, and Lewis indeed acknowledges that he holds the Property as trustee. The Trust Deed, however, fails to specify, *inter alia,* the identity of the beneficiaries and their respective shares. Accordingly, the Trust Deed fails to create an express trust.

"The general rule is that, upon the failure of an express trust, a resulting trust arises in favor of the settlor or his heirs." *Jones v. Royal Builders of Bloomington Normal, Inc.*, 39 Ill.App.3d 489, 491, 350 N.E.2d 485, 486 (1976) ("*Jones II*"); *see also Jones v. McCollen*, 85 Ill.App.2d 375, 227 N.E.2d 788 (1967) ("*Jones I*"). *Jones II* involved a trust deed which, like the Trust Deed here, referenced a trust agreement. The trust deed had been executed by Florence Jones, conveying certain real estate to two of her seven children as trustees. One of the other five children conveyed his interest to a third party, and the two trustees brought a suit against that third party to quiet title, claiming that the third party took nothing by the conveyance. According to the two trustees, their siblings held no interest in the property except a personal property interest as beneficiaries of the trust. The trust deed itself, however, was insufficient to establish an express trust, because several necessary terms were missing, e.g., the beneficiaries and the nature and extent of their interests. *Jones II*, 350 N.E.2d at 485-86. Although the trustees argued that the trust agreement once existed and had been lost or mislaid, the trial court found the proofs insufficient to establish that the trust agreement had ever existed. Accordingly, the trial court ordered that the two trustees held the

-8-

property as trustees of a resulting trust for the benefit of the heirs of Florence Jones, i.e., her seven children (or their successors in interest, including the third party referenced above). *Id.*

On appeal, the trustees contended that a declaration of trust which they had executed after their mother's death contained the same terms that were originally set forth in the trust agreement. They argued that although the Statute of Frauds requires that trusts in land be evidenced by a writing containing the necessary terms, their declaration of trust, setting forth the terms intended by the settlor, satisfied that requirement. The appellate court found it unnecessary to decide whether the trustees' legal argument was correct, because even assuming that it was, the proofs were insufficient:

> The trustees cannot declare any trust. They must declare the trust intended by the settlor. Plaintiffs' argument is based upon the factual conclusion that they knew the terms intended by the settlor. The trial court found that the express trust failed for want of proof. The evidence fully supports that finding. The proof necessary to establish the *existence* of a trust by parol evidence has been phrased in various ways: The proof must be "clear and convincing" ... ; "unequivocal and unmistakable" ... ; even so strong, unequivocal and unmistakable as to lead to but one conclusion. ... A similar high degree of proof is necessary to establish the *terms* of the trust, such as the identity of the beneficiaries, and the nature and extent of their interests. ...

*Id.* at 487 (emphasis added). The court held that the testimony adduced fell far short of the standard of evidence necessary to establish the terms of the trust and therefore affirmed the trial court's ruling that a resulting trust arose in favor of the heirs and their successors. *Id.*

Again, the Trust Deed in this case fails to create an express trust, because certain necessary terms are missing, including, *inter alia*, the identity of the beneficiaries. Although Lewis attempted to supply the missing terms, - - testifying that his mother intended that he be the sole beneficiary of the trust, - - his testimony was wholly lacking in credibility. Even assuming that he could supply such terms by parol, the evidence falls far short of the required standard. Accordingly, the court finds and concludes that Lewis holds the Property on a resulting trust for the benefit of Gertrude

-9-

Lewis' four children.

That conclusion, however, does not necessarily warrant the relief requested by the Chapter 7 Trustee. As indicated above, he seeks to sell both the estate's interest in the Property and the interests of Debtor's siblings pursuant to §363(h) of the Bankruptcy Code. That section provides as follows:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Here, there is no dispute that the fourth requirement, quoted above, is satisfied. The other three requirements, however, are disputed. As for the first, i.e., that partition in kind is impracticable, "courts uniformly hold that there is no practicable way to partition" a single family residence shared by the debtor and the debtor's spouse (or, as here, the Debtor's sister). 3 Collier on Bankruptcy ¶363.08[4] (15th ed. rev. 2005).[1] Here, the parties have not stipulated that the

---

[1]    Collier notes that the "bankruptcy court's language in *Neylon v. Addario (In re Addario)* [53 B.R. 335 (Bankr. D.Mass. 1985)] is frequently quoted: 'Where property is a single family residence, there is no practicable manner of partition other than a sale and a division of the proceeds.'" 3 Collier, *supra*, at ¶363.08[4]. While this language is often quoted, it is interesting to note that the court in *Addario* went on to state: "The subject property is a single family ranch style dwelling with a basement in law apartment. The appraiser testified that the apartment could not be converted to a condominium under applicable zoning law. Moreover, no other building could be constructed on the 4600 square foot lot. In light of these facts, I find that partition of the locus is impracticable." *Addario*, 53 B.R. at 338.

property at 11352 South Laflin is a single family residence; during the trial, they merely referred to it as "the property" or "the house." *Assuming* the "house" is a single family residence, this element would be satisfied.[2]

As for the second requirement, i.e., that sale of the estate's undivided interest would realize significantly less than sale of the entire property, Collier again notes that "[i]n single-family residence cases, this condition is easily satisfied;" courts recognize that the co-owner's continued presence at the property will chill any potential bids for the debtor's undivided interest. 3 Collier, *supra*, at ¶363.08[5]. Collier goes on to note that some trustees have submitted an appraiser's testimony concerning the lesser market value of the debtor's undivided interest. *Id.* Where no testimony is presented, "[o]ther courts have been willing to take judicial notice, under Fed. R. Evid. 201, that a sale of the debtor's undivided interest would generate less for the estate than a sale of the entire property." *Id*; *see also In re Griffin*, 123 B.R. 933, 935-36 (Bankr. S.D.Fla. 1991); *In re Gillissie*, 215 B.R. 370, 380 (Bankr. N.D.Ill. 1997). In *In re Vassilowitch*, 72 B.R. 803 (Bankr. D.Mass. 1987), however, the court took judicial notice with the proviso that it would entertain a motion for reconsideration if, within ten days, the co-owner could present an appraiser's affidavit contradicting the requisite finding under subsection (h)(2). The court so conditioned its ruling in light of the "'high degree of indisputability [that] is the essential prerequisite' to taking judicial notice" under Federal Rule of Evidence 201. *Vassilowitch*, 72 B.R. at 808 (quoting from the Advisory Committee Note to Fed.R.Evid. 201); *see also In re Gauthreaux*, 206 B.R. 502, 505-06

---

[2]        In Plaintiff's Proposed Findings of Fact and Conclusions of Law, submitted after the trial, the Chapter 7 Trustee proposes a finding that "[t]he Property [is] a single residential home and the land that it sits on ... ." (Plaintiff's Proposed Findings, No. 10). Again, however, there is no evidence in the record to support this finding, other than the inference that a "house" is perforce a single family residence.

-11-

(Bankr. N.D.Ill. 1997) (court took judicial notice, but further noted that requirements of Fed.R.Evid. 201(e), concerning a party's opportunity to be heard as to propriety of taking judicial notice, were satisfied; although trustee had not sought application of Rule 201 during trial, he did so in his proposed post-trial findings and conclusions, and defendant had opportunity to, and did, object thereto); *cf.* B. Russell, Bankruptcy Evidence Manual § 201.10 (2006 ed.) (criticizing the taking of judicial notice as to the finding required by subsection (h)(2) and noting that it would be "a simple matter for the trustee to testify on this issue"). Under the circumstances of this case, the court is not inclined to exercise its discretion to judicially notice that sale of the Debtor's undivided interest will yield significantly less than sale of the entire Property.[3]

Moreover, the court finds that the third condition of §363(h), i.e., that the benefit to the estate of a sale free of the interests of Debtor's co-owners outweighs any detriment to them, has not been satisfied. In connection with this requirement (as with the other three conditions of §363(h)), the trustee bears the burden of proof. His initial burden, however, is simply to show that a sale free of the interests of the debtor's co-owners will produce a benefit to the estate. Once that burden is met, the defendants must come forward with evidence of detriment. *See, e.g., In re Coletta Bros. of North Quincy*, 172 B.R. 159, 165 (Bankr. D.Mass. 1994); *see also In re Grabowski*, 137 B.R. 1, 3 (S.D.N.Y. 1992), *aff'd mem.*, 970 F.2d 896 (2d Cir. 1992) (burden shifts once trustee makes out prima facie case of benefit). The court in *Coletta Bros.* described the trustee's burden under §363(h)(3) as follows: "Although the [trustee] bears the ultimate burden of proof on this issue, [his] initial burden is only to show that sale of the property free of the Defendant's interest would produce

---

[3]      Under Fed.R.Evid. 201, judicial notice is mandatory when a party makes the request and provides the necessary information. Fed.R.Evid. 201(d). No request was made in this case.

a benefit to the estate: that the estate's share of the net proceeds would exceed existing liens on the Debtor's interest in the property."[4]

The trustee often satisfies this burden through stipulations as to the value of the property and the amount of existing liens, or through the testimony of appraisers or the parties themselves. *See, e.g., In re Gauthreaux*, 206 B.R. 502 (Bankr. N.D.Ill. 1997); *In re Griffin*, 123 B.R. 933 (Bankr. S.D.Fla. 1991); *In re Coombs*, 86 B.R. 314 (Bankr. D.Mass. 1988); *In re Vassilowitch*, 72 B.R. 803 (Bankr. D.Mass. 1987). Here, there are no such stipulations or testimony, - - there is merely the trustee's unsworn representation to the court that the Property is worth between $170,000 and $190,000 (and Lewis' unsworn statement that it was worth "under $100,000"). (Transcript, at 5). The only shred of evidence on this point is an entry on Debtor's Schedule A, stating that the current market value of her interest in the Property (without deducting any secured claims or exemption) is $70,000.[5]

In *In re Cobb*, 56 B.R. 440, 442 (Bankr. N.D.Ill. 1985), the court, in ruling on a motion for summary judgment as to modification of the automatic stay, stated that it was "inclined to give little weight to values ascribed to assets in bankruptcy schedules" as they are often prepared in haste without much thought being given to the values set forth therein. *Id.* The court further noted that the debtors' prior statement of value in their schedules was merely an admission by a party opponent,

---

[4]     In *Coletta Bros.*, which apparently involved commercial property, the issue was presented on a motion for summary judgment. The court found that the trustee had not met his initial burden, noting, *inter alia*, that the trustee's "Sales Comparison Schedule" was not evidence, and that its numbers were not supported by evidence; only the sales price was in evidence, and that was insufficient under the circumstances to meet his burden. 172 B.R. at 165.

[5]     As discussed above, Debtor essentially repudiated this entry in her testimony and suggested that it was her attorney who had set forth the information in Schedule A. The court notes that an amended Schedule A was ultimately filed which listed a "[p]ossible interest" in the Property "as a trust beneficiary shared with three siblings," showing the value of Debtor's interest as $17,500 (i.e., one-fourth of $70,000). However, there is no evidence that Debtor participated in the preparation of the unsigned amended schedule.

constituting an exception to the hearsay rule. *Id.* (citing Fed.R.Evid. 801(d)(2)).

Although in this proceeding - - where the schedules were received in evidence without objection - - the $70,000 value may be considered as evidence not only against the Debtor but also as against Debtor's co-owners, the court nonetheless finds that in the circumstances of this case the statement has minimal, if any, probative value and is not sufficient to meet the Chapter 7 Trustee's initial burden of showing a benefit to the estate. Contributing to the insufficiency of the proofs in this regard is the dearth of evidence concerning the existence *vel non* of any liens or encumbrances on the Property. Although Lewis testified, when asked what consideration he had paid for the Property, that he gave his mother ten dollars and also "paid off the mortgage and all of the bills that were due at that particular time" (Transcript, at 44), there is virtually no testimony or other evidence to show that there are no mortgages, real estate tax liens, or other encumbrances on the Property *at present.*[6]

Accordingly, the court finds that the Chapter 7 Trustee has failed to establish a right to sell the entire Property pursuant to §363(h) of the Bankruptcy Code.

---

[6]     Again, the entry on Schedule A, listing the value of Debtor's interest in the Property as $70,000 with corresponding "Amount of Secured Claim" shown as "0.00," has little or no probative value in this case.

-14-

## CONCLUSION

For all of the reasons set forth above, Defendants are entitled to a judgment in their favor, and the Chapter 7 Trustee's request for authorization to sell the Property is denied. This opinion constitutes the court's findings of fact and conclusions of law under Bankruptcy Rule 7052 in connection therewith. A separate order will be entered pursuant to Bankruptcy Rule 9021.

Dated:

ENTER:

Susan Pierson Sonderby
United States Bankruptcy Judge

-15-